IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2015

**JAMES LAMBERT v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for McNairy County**
**No. 2863    J. Weber McCraw, Judge**

_____

**No. W2015-00238-CCA-R3-PC  -  Filed October 15, 2015**
_____

The Petitioner, James Lambert, appeals the McNairy County Circuit Court's denial of his petition for post-conviction relief from his convictions for rape of a child, incest, and aggravated sexual battery, for which he is serving a twenty-five-year sentence. The Petitioner contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claims. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Lisa M. Miller, Selmer, Tennessee, for the appellant, James Lambert.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; Bob Gray, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions relate to his sexual abuse of his then-twelve-year-old daughter. In the appeal of the convictions, this court summarized the facts as follows:

> In March or April of 2010, the victim was watching television with Appellant. He told her to go get a glass of milk. When the victim returned from the kitchen, Appellant was sitting on the couch under a blanket. Appellant lifted the blanket and exposed himself to the victim. She could see that his underwear was down around his ankles. Appellant told the victim to "suck" his private. The victim explained that Appellant put his

private in her mouth while her grandmother was cooking dinner in the kitchen. The victim was told to stop when her grandmother informed them that dinner was ready. The victim stated that her grandmother could not see the living room from the kitchen.

According to the victim, one night during May of 2010 while she was in the sixth grade, she dragged her mattress to the living room to sleep. The victim slept in her underwear on the mattress. The victim was awakened in the middle of the night by Appellant. He was removing her clothing. The victim knew that it was morning but described it as still dark outside. Appellant removed her underwear. The victim could see her father's "private." He instructed her to "ride him," then picked her up and had her sit on his waist. Appellant was lying on his back at the time and ordered the victim to wrap her legs around him and "slide" back and forth. The victim explained that her "front private" was touching his "front private." After five to ten minutes, the victim stated that "white, gooey stuff" came out of Appellant's private. He instructed her to get a paper towel to clean up the gooey stuff.

Sometime later, the victim told her cousin about the incidents. The victim also talked to a police officer and was interviewed by someone at the Child Advocacy Center. As a result of her statements, Appellant was arrested and subsequently indicted by the McNairy County Grand Jury in October of 2011 with rape of a child, two counts of aggravated sexual battery, attempted aggravated sexual battery, and incest.

At trial, the victim testified about the incidents leading up to the indictment. She had lived with her father and grandmother since the age of five. At the time of trial, the victim was living with her mother and stepfather. The victim acknowledged that she did not tell the interviewer at the Child Advocacy Center everything that had happened because she was scared.

*State v. James A. Lambert*, No. W2012-01681-CCA-R3-CD, 2013 WL 3131004, at *1-2 (Tenn. Crim. App. June 14, 2013).

In his post-conviction petition and the amended petitions, the Petitioner alleged that he received the ineffective assistance of trial counsel in numerous respects related generally to counsel's investigation, preparation, consultation with the Petitioner, and advocacy during the trial and sentencing hearing.

At the post-conviction hearing, trial counsel testified that he filed discovery motions and spoke with the Petitioner "[o]n numerous occasions" about the discovery information and the evidence. He said he and the Petitioner reviewed the transcript of the victim's forensic interview. He did not recall the Petitioner's stating that the Petitioner had a sixth-grade education and that the Petitioner did not read well.

Trial counsel testified that he received two plea offers from the State, which he conveyed to the Petitioner. One offer provided for an eight-year sentence, and the other provided for a twelve-year sentence. Counsel said he had noticed defects in the indictment and had discussed possible defense strategies with the Petitioner based on the defects. Counsel said the State discovered the error and made a twelve-year plea offer on one count of aggravated sexual battery. He noted that at the time, the Petitioner was charged with offenses related to two victims but that one of the indictments was dismissed. He said that after consultation with the Petitioner, the other indictment was amended in order to have the case heard more quickly due to the Petitioner's incarceration.

Trial counsel testified that he advised the Petitioner it was "not uncommon" for the court to impose consecutive sentences in sexual abuse cases and that the Petitioner faced twenty-five years on one count and eight years on the remaining counts.

Trial counsel thought that the Petitioner was brought to court on January 27, 2012, for a "mandatory appearance date" to announce whether the case would be resolved by a plea agreement or would go to trial. Counsel agreed that the case was set for trial on February 6, 2012. He said problems might have existed regarding his subpoenas for Department of Children's Services (DCS) records relative to the victim's prior sexual abuse allegations. Counsel said he did not use the DCS records to impeach the victim's credibility because they pertained to the allegations against someone other than the Petitioner. Counsel said the records reflected an opinion by the person who conducted a forensic examination that the victim had been "coached" to make unfounded accusations by the Petitioner, the Petitioner's girlfriend, or both, due to an ongoing custody dispute between the Petitioner and the victim's mother. Counsel said he faced a dilemma because if he had presented proof of the prior allegations involving a different perpetrator, the State could offer proof that the prior allegations were false and that the Petitioner coached the victim to make them.

Trial counsel testified that he did not know the credentials of the persons who interviewed the victim relative to her separate allegations against the Petitioner and another individual. Relative to the person who interviewed the victim regarding the allegations that were determined to be unfounded, counsel said he did not know if the person was qualified to determine that the victim had been coached. Counsel said he discussed the interview records with the Petitioner. Counsel said he did not request the

résumé of Monica Goodman, who conducted the victim's forensic interview relative to the allegations against the Petitioner. Counsel acknowledged that Ms. Goodman was one of the State's main witnesses but said he thought the verdict was based upon the victim's testimony. He said he made a successful hearsay objection when the State attempted to offer proof of what the victim told Ms. Goodman about the offense. He said he had never seen a successful challenge to the qualifications of a forensic interviewer employed by DCS or the sexual assault center at which the victim was interviewed. He said that the forensic interviewers from these agencies did not ask leading questions and that the questioning of the victim relative to the Petitioner's case was not suggestive or leading.

Trial counsel estimated he met with the Petitioner at least ten to fifteen times to discuss the case. He said they met a sufficient number of times to prepare adequately for the trial. Counsel said that if the Petitioner testified counsel had only talked to Petitioner for about ten minutes before the court appearances, the Petitioner's testimony would not be truthful. He said that he had access to the Petitioner at the jail and that jail personnel never restricted his access or impeded the trial preparation. He said he probably did not meet with the Petitioner every time the Petitioner requested. He explained that his role was not to be his clients' friend but that he saw them when he had information to give them.

Trial counsel testified that the offense occurred at the home shared by the Petitioner and his mother. He said the Petitioner's mother was home during one incident and was in the kitchen adjacent to the living room where the offense occurred. Counsel acknowledged he did not visit the home to determine if the Petitioner and the victim would have been in the Petitioner's mother's line of sight, but he said the Petitioner's mother stated she had not seen anything. He did not recall how many times he spoke with the Petitioner's mother. He did not think her testimony that she had been in an adjacent room within eyesight but did not see anything would have been helpful to the defense, although he thought he said in his closing argument that she would have been able to witness the offense if it had occurred. He thought he interviewed the police officer who filed the charges.

Trial counsel did not specifically recall coming to court on February 6 and having the case reset until February 27 in order for subpoenas to be issued. He did not specifically recall the Petitioner's giving him a list of witnesses for whom the Petitioner wanted subpoenas issued. Counsel said, though, he told the Petitioner that unless the witnesses were present and had first-hand knowledge, they would not be allowed to testify. He did not recall if the Petitioner requested that counsel subpoena DCS employee Harry Nolan but "[v]aguely . . . remembere[d]" Mr. Nolan's name. Counsel said that he did not subpoena or talk to Mr. Nolan but that he subpoenaed any DCS records related to allegations made by the victim. He said that when he received the documents, "none of them were in reference to that name."

-4-

Trial counsel did not recall whether the Petitioner requested he subpoena Patricia Foster, the Petitioner's girlfriend, and counsel did not think he subpoenaed her. Counsel said that he did not dispute the accuracy of the court file if it reflected that Brandon Campbell, whom counsel thought the Petitioner had identified as having information about the victim's prior allegations against a person other than the Petitioner, was subpoenaed on February 9, 2012. Counsel did not recall whether a subpoena was served on Mr. Campbell. He said that he did not subpoena anyone who did not have information about the case and that he did not talk to Ms. Foster or Mr. Campbell to determine if they had information about the case. He said he did not call Mr. Campbell as a witness. Counsel said that if Mr. Campbell did not appear pursuant to a subpoena, counsel would have requested a continuance, although the trial court typically denied continuances based upon unserved subpoenas. Counsel did not recall whether he requested a continuance. He said that it was not uncommon to have difficulty locating a witness. He said that in this situation, he would subpoena the witness, and that when the witness appeared, he would question the witness about any relevant information.

Trial counsel testified that his understanding from the Petitioner was that Mr. Nolan, Mr. Campbell, and Ms. Foster had information about a prior unfounded allegation the victim made because the victim had been coached to make the allegation.

Trial counsel thought he subpoenaed the Petitioner's mother but said he did not call her as a witness because she did not know anything about the offense. Counsel said her subpoena should have been in the court file "unless she was present."

Trial counsel testified that he understood the victim, the Petitioner, and the Petitioner's mother were the only people present at the time of the offense. He said any other witnesses he might have subpoenaed were not present for the relevant events.

Trial counsel testified that the trial court questioned the victim to determine if she knew the difference between right and wrong and was competent to testify.

Trial counsel testified that the defense did not offer any proof. He said that he and the Petitioner discussed the Petitioner's right to testify and that the Petitioner signed a waiver of the right to testify. He recalled discussing a prior conviction that could have been used to impeach the Petitioner's credibility.

Trial counsel testified that he did not file a notice of sentence mitigating factors because he was unaware of any that applied to the Petitioner. Counsel said he reviewed the presentence report with the Petitioner. Counsel did not call any witnesses to testify at the sentencing hearing. He said both the Petitioner and the Petitioner's mother were

-5-

adamant the offense did not occur. Counsel said that calling the Petitioner or the Petitioner's mother as sentencing hearing witnesses "would do more harm than good."

Trial counsel testified that he did not call any witnesses to testify at the motion for a new trial hearing. He did not recall being hesitant to represent the Petitioner in the appeal of the convictions, but he acknowledged that he had requested that the trial court appoint new counsel for the Petitioner's appeal. Counsel "[v]aguely" recalled advising the court that the Petitioner was not happy with counsel's representation. He said that he submitted an appellate brief on behalf of the Petitioner and that his representation was unaffected by his efforts to have substitute counsel appointed.

Trial counsel did not recall any discussion in which the Petitioner advised him of identifying marks on the Petitioner's body that the victim should be able to identify if her allegations were accurate. Counsel said he had not heard about the Petitioner's body marks before the post-conviction petition was filed.

Trial counsel testified that he recalled the Petitioner's concern that the assistant district attorney general had a conflict of interests. Counsel thought the issue had been raised in a sidebar conference during the trial. He said he brought it to the court's attention at the Petitioner's request. He said he did not think a conflict existed based upon the assistant district attorney general having previously acted as a judge when a "completely separate incident took place years ago." Counsel said he explained his view to the Petitioner.

Trial counsel testified that he saw photographs of the home in which the offense occurred. He did not recall if they were in the State's or his possession. He said that if they were in his possession, he would have shown them to the Petitioner before the trial.

Trial counsel agreed he had a transcript of the victim's forensic interview and said he reviewed it with the Petitioner. Counsel thought he did not receive a video recording of the interview from the State and did not recall reviewing a recording of the interview. He agreed a video recording of the interview would have shown the victim's body language and possibly would have been helpful in impeaching the victim's credibility. He agreed, though, that the recording was inadmissible hearsay. He said the video recording would not have assisted him materially in preparing the case for trial. He said that the most important time for evaluating a witness's credibility was when the witness testified and that the victim had been credible when she testified. Counsel thought the victim's mother had not permitted him to talk to the victim outside of the courtroom, but he said he had questioned the victim at the preliminary hearing. He did not see any significant inconsistencies between her testimony at the preliminary hearing and at the trial. He said that if he argued at the trial that the victim's testimony contained a "glaring contradiction," he was not referring to a contradiction between her trial testimony and her

preliminary hearing testimony because her preliminary hearing testimony was not admitted as trial evidence.

Trial counsel testified that he never had any indication the Petitioner did not understand their discussions and trial preparations. Counsel said, "The only . . . issue I had with [the Petitioner] along those lines is him not accepting what I was telling him." He explained,

> I would point out to him what I thought the strengths in the State's case and he didn't see it – would not see it as such. I would inform him of what he was potentially looking at . . . in regards to punishment and it wasn't a matter . . . [of] whether he did not understand it, he just didn't accept it as such.

The Petitioner testified that in his opinion, the assistant district attorney general who prosecuted him had a conflict of interests because the assistant district attorney general had acted as the judge in a custody matter involving the victim. The Petitioner said he had been awarded custody of the victim "because she said a man supposedly molested her." The Petitioner thought the conflict existed based upon the assistant district attorney general's prior knowledge of him and the similarity of the allegations in this case and those in the custody case. The Petitioner acknowledged that the custody litigation took place around 2002, about ten years before the offense in this case.

The Petitioner testified relative to the custody case that the judge told the victim's mother not to have any contact with the victim except through the Carl Perkins Center. He said that the victim's mother took the victim to the forensic interview relative to this case and that he thought the victim's mother had influenced the victim's statement in the interview.

The Petitioner testified that trial counsel and he never reviewed the victim's DCS records relative to the prior allegation. The Petitioner said that when he walked into the courtroom, counsel slid the records to him and said, "Here's the records you wanted to see." The Petitioner said he had informed counsel that he had a sixth-grade education and had trouble reading. He clarified at the hearing, though, that he could read but had trouble writing. He said that although he had not seen the DCS records until he arrived at court, he had possessed the transcript of the forensic interview for some time. He said that he asked counsel to subpoena witnesses, that he complained to the trial court about counsel's failure to subpoena witnesses, and that he asked the court to appoint another attorney. He acknowledged that the court ordered the subpoenas to be issued. He acknowledged counsel's post-conviction testimony that the subpoenas were to be issued for the DCS records, but the Petitioner said his understanding had been that the witnesses were to be subpoenaed, as well. He said the witnesses for whom he wanted subpoenas

issued were Brandon Campbell, Patricia Foster, the Petitioner's mother, and Harry Nolan. He agreed that Mr. Campbell was subpoenaed, but said that Mr. Campbell did not appear to testify at the trial and that no continuance was requested. He said that to his knowledge, his mother was the only witness identified by the Petitioner with whom counsel spoke.

The Petitioner testified that he had wanted Ms. Foster to testify at the trial about "some of the stories that [the victim] was telling." He said he and Ms. Foster spoke to counselors about how to deal with the victim's untruthfulness. He said the victim's claims included that the victim's mother injected drugs and that the victim had to eat dog food. The Petitioner said that counsel claimed not to have been able to locate Ms. Foster but that the Petitioner had been able to locate her address after he was in prison and that the Petitioner's mother had contacted Ms. Foster.

The Petitioner testified that trial counsel told him Mr. Nolan was no longer working for DHS.[1] The Petitioner said that this information was inaccurate and that Mr. Nolan worked for DHS but had transferred to a different county.

The Petitioner acknowledged DCS records from a 2004 investigation regarding the victim's having been touched inappropriately by a man other than the Petitioner. The notes of the investigation indicated that two witnesses thought the Petitioner and Ms. Foster coached the victim to make the accusation in order for the Petitioner to obtain custody of the victim. The Petitioner acknowledged that if trial counsel had called the witnesses he requested, the witnesses would have testified about the Petitioner and Ms. Foster's coaching the victim to make a false accusation. The Petitioner said that he had not understood at the time of the trial that counsel did not call witnesses who had been determined by DCS not to be credible but that he now understood. He said counsel never discussed the matter with him and merely provided him with the DCS records. He claimed he had not known until "just a while ago" that the records contained a finding that he and Ms. Foster coached the victim to make a false accusation.

The Petitioner testified that trial counsel did not call his mother as a witness. He said his mother could have stated that she was present and that she would have seen the offense if it occurred as the victim claimed.

The Petitioner testified that he had three or four court appearances after the arraignment. He said trial counsel met with him a few minutes before these appearances. He said he only met with counsel once other than at court appearances. He later said he met with counsel twice other than court appearances, once being a meeting at which counsel's investigator was also present. The Petitioner said he told counsel and the

---

[1] The record contains inconsistent information about whether Mr. Nolan worked for DCS or DHS.

investigator the things he thought they should discuss with the witnesses who he thought had relevant information.

When asked if requested trial counsel visit the home in which the offense occurred, the Petitioner said he assumed counsel would visit it. He said the "motion of discovery" he received stated that the offense occurred in a different location.

The Petitioner testified that he declined the first plea offer. He said he told trial counsel he did not want to accept the offer because, "I hadn't done nothing to do 8 years at a hundred percent." He said counsel left the room and returned later with a second plea offer of "12 years at a hundred percent and 6 years on paper." The Petitioner said he declined this offer, as well. He said that at the trial, counsel stated that the assistant district attorney general wanted the Petitioner to know that the twelve-year offer was still available but that the Petitioner rejected it. The Petitioner was unaware of any plea offer providing for a lesser sentence.

The Petitioner testified that he told trial counsel about a distinctive mark on his body from a welding burn. He said he asked counsel if the victim could be questioned about this mark, which would have been visible if the victim had seen his genitals. The Petitioner said counsel said, "No, that's no good. All she has to say is I don't know."

The Petitioner testified that trial counsel's reluctance to represent the Petitioner in the appeal of the convictions probably affected counsel's effectiveness. The Petitioner said counsel acted as if he did not like the Petitioner. He said counsel did not talk to him much and just told him, "This is what they're offering you." When asked if counsel discussed the positive and negative aspects of the plea offer, the Petitioner responded that counsel "[j]ust said this is what they're offering, pretty much." When asked if counsel discussed the positive and negative aspects of going to trial, the Petitioner said counsel stated, "Well, if you don't want this, I'll see you in a few minutes," and left the room. The Petitioner said, "[T]hey'd call me into the courtroom and here we'd be."

Relative to the sentencing hearing, the Petitioner testified that counsel advised the Petitioner that the Petitioner faced a twenty-five-year sentence. The Petitioner did not recall counsel's reviewing the presentence report with him. The Petitioner said he wanted counsel to present evidence at the sentencing hearing that the victim's mother had let the victim drink alcohol to the point of intoxication, but he claimed that counsel told him the victim's mother was not the person on trial. The Petitioner said that someone from DHS spoke with the victim about the alcohol use but that the Petitioner never saw any records relative to this allegation.

The Petitioner testified that charges against him relative to another victim were dropped. He thought the charges were dropped because he was found guilty in the present case.

The Petitioner acknowledged that counsel told him the State would have been able to impeach him with his prior felony drug conviction if he had testified at the trial.

After receiving the proof, the post-conviction court made these findings:

The Court accredits the testimony of [trial counsel].

The Court finds that [trial counsel] provided adequate assistance; he met with petitioner and discussed the case, including possible defenses and negotiated plea opportunities. The defense counsel presented a reasonable defense for the petitioner, a jury did not accept the defense.

Petitioner failed to show any deficient performance by [trial counsel]. The facts did not permit a reasonable finding of not guilty unless the jury did not believe the victim. [Trial counsel] explained to petitioner . . . the difficulty of a trial based on the facts which he expected to be presented by the State.

The Court finds that petitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210. The petitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The petitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. The petitioner has not shown that he was incapable of defending himself in a court of law.

It is therefore ORDERED that the petition for post conviction relief is denied and dismissed.

This appeal followed.

In his appellate brief, the Petitioner contends that the post-conviction court erred in determining that he did not prove he received the ineffective assistance of counsel. The State responds that the Petitioner has not shown error in the post-conviction court's determination.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

# I

## Failure to Investigate and Present Evidence Regarding the Petitioner's Mother's Presence at the Time of the Offense

The Petitioner contends that trial counsel's investigation and presentation of the defense were inadequate relative to the Petitioner's mother's presence when the offense occurred and her ability to witness any misconduct. The Petitioner argues that although his mother was in an adjacent room at the time the victim said the offense occurred, counsel failed to investigate the scene and failed to call the Petitioner's mother as a witness to testify that if anything occurred, she would have seen it. The Petitioner notes that counsel did not go to the home where the incident occurred to take photographs.

Trial counsel testified that although he did not visit the home, the Petitioner's mother told him she had not seen anything. Counsel said he reviewed photographs of the home. Counsel said he did not call the Petitioner's mother as a witness because she had no knowledge of the offense. The Petitioner has not explained how investigation of the scene would have benefitted him. We note that no photographs of the scene were offered as exhibits at the post-conviction hearing. The petitioner's mother was not called as a witness at the hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). We note that at the trial, the victim testified that her grandmother, the Petitioner's mother, could not have seen the living room where the offense occurred from the Petitioner's mother's location in the kitchen. *James A. Lambert*, 2013 WL 3131004, at *1. The Petitioner failed to establish his claim, and he has not shown that the post-conviction court erred in denying relief on this basis.

# II

## Failure to Challenge the Qualifications of the Forensic Interviewer

The Petitioner contends that trial counsel provided ineffective assistance because counsel did not request and review the résumé of Monica Goodman, the forensic interviewer who spoke with the victim relative to the offense. The Petitioner argues that counsel should have used the information to challenge Ms. Goodman's qualifications to conduct the forensic interview.

Trial counsel testified that in his experience as a trial attorney, he had never seen a successful challenge to the qualifications of a forensic interviewer employed by DCS or the sexual assault center at which the victim was interviewed. Counsel said the forensic interviewers from DCS and the sexual assault center did not ask leading questions. He

said that he reviewed the transcript of the forensic interview and that the questioning of the victim was not suggestive or leading. No evidence was presented at the post-conviction hearing regarding Ms. Goodman's qualifications, and no evidence established any basis upon which a successful challenge to Ms. Goodman's qualifications might be made. The Petitioner has not shown that the post-conviction court erred in denying relief on this basis.

### III

### Consultation with and Preparation of the Petitioner

The Petitioner contends that trial counsel failed to consult with him and failed to prepare him adequately for the trial and the sentencing hearing. The Petitioner notes his own post-conviction hearing testimony that counsel met with him for a few minutes before each court appearance and two other times at the jail. The Petitioner said counsel merely advised him of the plea offer but did not discuss the benefits and disadvantages of accepting the offer versus going to trial. The Petitioner testified that counsel never reviewed with him the DCS records relative to the victim's prior allegations, that counsel did not discuss the benefits and perils of calling DCS employees as witnesses to testify about the prior allegations, and that he and counsel never reviewed the presentence report together.

Trial counsel testified that he met with the Petitioner ten to fifteen times, that they spoke numerous times about the discovery information and the evidence, that they reviewed the transcript of the victim's forensic interview, and that their meetings were sufficient to prepare adequately for the trial. Counsel said that if the Petitioner testified they met only a few minutes before court appearances, the Petitioner's testimony was untruthful. Counsel said that he never had any indication the Petitioner did not understand their discussions but that when he pointed out the strengths of the State's case and the punishment the Petitioner faced, the Petitioner refused to accept the information. Counsel said he advised the Petitioner of the plea offers and of the likelihood the Petitioner would receive consecutive sentences. Counsel said he reviewed the presentence report with the Petitioner. The Petitioner argues that counsel failed to file a notice of mitigating factors relative to sentencing, but counsel testified that no factors applied to the Petitioner's case.

Relative to the conflicts between the testimony of the Petitioner and that of counsel, we note the post-conviction court's findings that counsel's testimony was credible and that counsel met with the petitioner and discussed the case, including the plea offers. The evidence does not preponderate against the court's findings. The post-conviction court did not err in denying relief on this basis.

-13-

## IV

## <u>Failure to Challenge the Victim's Competency and Credibility</u>

The Petitioner argues that trial counsel provided ineffective assistance in failing to challenge the victim's competency and credibility through cross-examination regarding her prior allegations of sexual assault by an individual other than the Petitioner. The Petitioner has not articulated how the prior allegations affected the victim's competency to testify as a witness. Counsel testified that the trial court questioned the victim to determine if she knew the difference between right and wrong and was competent to testify. The Petitioner has not identified the actions counsel should have taken relative to the victim's competency, and we will not speculate in this regard.

Relative to impeachment of the victim's credibility with evidence of her prior allegations against an individual other than the Petitioner, trial counsel testified that he did not impeach the victim's credibility through cross-examination about the prior allegations because the DCS records of the prior allegations reflected the investigator's opinion that the Petitioner, the Petitioner's girlfriend, or both of them coached the victim to make the allegations in order to influence the outcome of a custody dispute. We note, though, that the trial transcript reflects counsel attempted to ask the victim about the prior allegations. During cross-examination at the trial, counsel asked the victim if she recalled someone other than the victim touching her inappropriately. The victim responded, "No, sir." Counsel then asked, "Do you remember your dad taking you to talk to some folks about an incident when you were around five years old?" The victim responded that she did not. Counsel then asked if the victim understood that she was under oath, and the victim said she did. The trial transcript also reflects the court's ruling that extrinsic evidence of the victim's prior allegations would not be allowed.

The post-conviction court did not specifically address the discrepancy between counsel's recollection and the trial transcript relative to impeachment of the victim's credibility. The trial transcript reflects that counsel attempted to challenge the victim's credibility by cross-examining her about facts relative to the prior allegations, but the victim could not remember. The Petitioner's factual premise – that counsel did not attempt to impeach the victim's credibility by inquiring about the prior allegations – is unsupported by the trial transcript.

The Petitioner contends that trial counsel was ineffective in impeaching the victim's credibility because counsel did not cross-examine her about identifying marks the Petitioner claimed to have on his body with which the victim would be familiar if the allegations were accurate. At the post-conviction hearing, trial counsel did not recall the Petitioner's having mentioned the identifying marks and said he first heard about the marks after the post-conviction case was filed. As we have noted, the post-conviction

-14-

court found that counsel's testimony was credible. The evidence does not preponderate against the court's determination.

The Petitioner contends that trial counsel was ineffective because counsel failed to request copies of any psychological assessment that may have been performed on the victim and failed to obtain the victim's recorded forensic interview. He argues, without explanation, that these items could have aided the defense by impeaching the victim's credibility. The Petitioner did not offer any evidence of the existence of a psychological assessment or the contents of such an assessment, and he did not offer the recorded forensic interview as an exhibit at the post-conviction hearing. The Petitioner failed to prove his claim, and the post-conviction court did not err in denying relief.

V

## Failure to Subpoena Witnesses and Request a Continuance

The Petitioner contends that trial counsel provided ineffective assistance relative to witnesses for whom the Petitioner wanted subpoenas issued and in failing to request a continuance because of an unserved subpoena. At the post-conviction hearing, the Petitioner testified that he wanted subpoenas issued for the Petitioner's mother, Brandon Campbell, Patricia Foster, and Harry Nolan. Relative to the Petitioner's mother, the record reflects that counsel spoke with her before the trial and that she was present for the trial but did not testify. Relative to the other witnesses, the Petitioner testified that they had information about the victim's prior allegations. The record reflects that at least some of these witnesses may have been subpoenaed after a hearing at which the Petitioner expressed his grievances that the witnesses had not been subpoenaed, but none of the witnesses whom the Petitioner has identified relative to this issue testified at the trial or at the post-conviction hearing. The Petitioner's failure to call his mother and the other individuals as post-conviction hearing witnesses is fatal to his claim. *See Black*, 794 S.W.2d at 757. Without their testimony, the Petitioner failed to show how he was prejudiced by any alleged deficiencies in failing to secure their attendance and testimony at the trial. The trial court did not err in denying relief on this basis.

VI

## Zealous Advocacy

The Petitioner contends that trial counsel provided ineffective assistance in failing to advocate zealously on the Petitioner's behalf. The Petitioner notes counsel's disagreement with him regarding the prosecutor's alleged conflict of interests because the prosecutor had acted as the judge in a prior custody matter in which the Petitioner was awarded custody of the victim. Counsel testified that although he did not think a conflict

existed and explained his view to the Petitioner, he nevertheless brought the Petitioner's concerns to the trial court's attention. The Petitioner also argues that counsel was hesitant to represent him on appeal and attempted to have different appellate counsel appointed, although the trial court denied counsel's request to be relieved of his duties of appellate representation. Counsel did not recall being hesitant to represent the Petitioner in the appeal and vaguely recalled advising the court that the Petitioner was not happy with the representation. The trial transcript reflects that counsel raised the issue as part of the motion for a new trial and that the court denied the motion. Counsel testified that he submitted an appellate brief on behalf of the Petitioner and that his representation was unaffected by his efforts to have substitute counsel appointed. As we have stated, the post-conviction court found that counsel's testimony was credible. The evidence does not preponderate against the court's finding. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE